THOMAS E. MONTGOMERY, County Counsel (State Bar No. 109654)
County of San Diego
By STEPHANIE KARNAVAS, Senior Deputy (State Bar No. 255596)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-5834;  Fax: (619) 531-6005
E-mail: stephanie.karnavas@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Patrick Lopatosky
        and Brian Butcher

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMAD ALI SAID, an individual, | No. 12-cv-2437-GPC(RBB) |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| COUNTY OF SAN DIEGO; DEPUTY SHERIFF PATRICK LOPATOSKY; DEPUTY SHERIFF BRIAN BUTCHER; DEPUTY SHERIFF LEE SCOTT; and DOES 1 - 50, inclusive, | Date:  April 10, 2015 Time: 1:30 PM Dept.: 2D  - Courtroom of the Honorable Gonzalo P. Curiel Trial Date:  None |
| Defendants. | |

I

## INTRODUCTION

Plaintiff Mohamad Ali Said brings this action against two Sheriff's deputies, Patrick Lopatosky ("Lopatosky") and Brian Butcher ("Butcher"), and the County of San Diego ("County"), alleging he was unlawfully arrested and subjected to excessive force in violation of California state law and the United States Constitution when he was arrested in January 2012 for violation of a protective order held by his wife.  Plaintiff contends he suffers from ongoing emotional distress and physical injury to his elbow as a result of the incident.

Defendants are entitled to partial summary judgment of the claims set forth in Plaintiff's Second Amended Complaint ("SAC") on the following grounds:

judgment on the following grounds:

    1.    Plaintiff has no evidence to support a claim against the County of San Diego for violation of 42. U.S.C. § 1983 ("§ 1983").  In particular, Plaintiff has no evidence that an "action pursuant to official municipal policy" or a failure to train amounting to deliberate indifference to individuals' constitutional rights was the "moving force" behind his alleged injury.

    2.    Plaintiff cannot prevail on his § 1983 claim against Deputies Butcher and Lopatosky based on unlawful arrest or his corresponding state law claim for false arrest because  he was arrested pursuant to probable cause.  Additionally, Deputies Butcher and Lopatosky are entitled to qualified immunity as to Plaintiff's § 1983 claim based on unlawful arrest.

    3.    Plaintiff cannot prevail on his § 1983 claim against Deputies Butcher and Lopatosky based on inadequate medical care because he cannot establish the Deputies were deliberately indifferent to his serious medical needs.  Rather, the undisputed evidence demonstrates that the Deputies immediately summoned the necessary medical assistance.  Additionally, Deputies Butcher and Lopatosky are entitled to qualified immunity as to this claim.

    4.    Plaintiff cannot prevail on his § 1983 claim against Deputies Butcher and Lopatosky based on malicious prosecution because there was, at a minimum, probable cause to arrest Plaintiff for violation of the protective order held by his wife. Additionally, Plaintiff has no evidence that the prosecution was initiated with malice or that either Deputy Lopatosky or Deputy Butcher took any action to compromise the prosecutor's independent judgment, and thus he has no evidence to overcome the presumption set forth in *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981).

    5.    Plaintiff cannot prevail on his claim for violation of California Civil Code § 52.1 because, the undisputed facts demonstrate that Plaintiff can prove no constitutional violation based on unlawful arrest, inadequate medical care, or malicious prosecution, and the only other constitutional violation Plaintiff alleges – excessive force—cannot in

and of itself, also comprise an alleged constitutional interference that gives rise to liability under § 52.1.  The alleged conduct must be shown to have been committed for the purpose of interfering with some other constitutional right.

## II

## STATEMENT OF UNDISPUTED FACTS

On June 16, 2009 a domestic violence misdemeanor  complaint was filed against Plaintiff in the Superior Court of California, County of San Diego, East County Division, alleging three counts for: 1) Corporal Injury to Spouse and/or Roommate, Penal Code Section 17(b)(4); 2) Battery of a Current or Form Significant Other, Penal Code Section 243(e)(1) and 3) Battery, Penal Code section 242, alleging the use of force and violence, and the infliction of injury on his spouse, Walaa Said, aka Walaa Alqershi.  (Separate Statement of Undisputed Material Facts ("SSUF") No. 11).[1]  A Criminal Protective Order against Plaintiff in favor of Walaa Said as the protected person was issued on July 13, 2009.  (SSUF No. 12).  On March 24, 2010, a jury found Plaintiff guilty of the crime of Battery of a Significant Other in violation of Penal Code section 243(e)(1), and Simple Battery in violation of Penal Code section 242 for a domestic violence incident involving his wife.  (SSUF No. 13).

Plaintiff was sentenced to, among other things, three years of summary probation, a condition of which was compliance with a criminal protective order that prohibited Plaintiff from having any personal, electronic, telephonic, or written contact with Ms. Alquershi or from coming within 100 yards of her. (SSUF No. 14).  The protective order also required Plaintiff to stay away from Ms. Alqershi's home, employment, or vehicle. (SSUF No. 14).  The protective order was to expire on May 23, 2013.  (SSUF No. 15). Plaintiff was plainly informed of the meaning of the protective order at his sentencing hearing and at that hearing was clearly admonished by Judge Roderick Shelton that only the Court could rescind the order and that no contact with Ms. Alqershi meant absolutely

---

[1] Defendants cite only to the SSUF, and not all the evidence in support thereof, to avoid lengthy citations in the brief.  Detailed citations to the evidence can be found in the

12-cv-2437-GPC(RBB)

no contact.  (SSUF No. 16).  Plaintiff had an Arabic interpreter at his trial and sentencing and Plaintiff admitted in his deposition that he understood the terms of his sentence.  (SSUF No. 17).

   At some point subsequent to Plaintiff's criminal sentencing, Ms. Alqershi became pregnant with Plaintiff's second child, a daughter, to whom she gave birth on October 1, 2011.  (SSUF No. 18).  On January 24, 2012, at approximately 5:50p.m., the Sheriff's Department communications center received a 911 call from a woman identifying herself as Walaa Alqershi.  (SSUF No. 19).  Ms. Alqershi indicated, among other things, that she had a restraining order against her husband, but she was living with him and that he was driving her crazy, and she was afraid he was going to kill her.  (SSUF No. 19).  Ms. Alqershi requested law enforcement assistance and while on the phone, she indicated she was leaving her house located at 3755 El Canto Dr. and was walking to her neighbor's house located at 3725 El Canto Dr.  (SSUF No. 19).

   Deputies Butcher and Lopatosky were on patrol on the evening of January 24, 2012, and received a radio call to respond to 3755 El Canto Dr., Spring Valley, California to contact an individual who may have been "5150", in other words, a person who, as a result of a mental health disorder, is a danger to others, or to himself or herself, or is gravely disabled.  (SSUF No. 20).  At some point the address for the call was changed to 3725 El Canto Dr. - a house a couple of houses down from the original address.  (SSUF No. 20).  Psychiatric Emergency Response Team ("PERT") clinician, Cynthia Van Lom, was assigned to work with Deputy Butcher and was riding with him in his patrol vehicle.  (SSUF No. 21).  Deputy Butcher and Ms. Vam Lom arrived at 3725 El Canto Dr. first, and made contact with the reporting party, Walaa Alqershi.  (SSUF No. 22).  They determined that Ms. Alqershi was not "5150" but was upset with her husband.  (SSUF No. 23).  Deputy Butcher was aware that Ms. Alqershi and her husband had a history of domestic violence because he had arrested her husband for spousal abuse in violation of Penal Code 273.5(a) back in April 2009.  (SSUF No. 23).  Ms. Alqershi told Deputy SSUF.

Butcher and Ms. Van Lom that she and Plaintiff had been living together, and that on that evening, Plaintiff had threatened to kill her and any cops that showed up if she called the cops on him. (SSUF No. 24). Ms. Alqershi wanted Plaintiff arrested. (SSUF No. 24).

Deputy Lopatosky arrived at the scene shortly Deputy Butcher. (SSUF No. 25). Deputy Butcher told him that he had spoken with Ms. Alqershi, and that he believed this was a violation of a restraining order call. (SSUF No. 25). Deputy Lopatosky took over as the primary deputy on the scene and also spoke directly to Ms. Alqershi. (SSUF No. 26). She told Deputy Lopatosky that she and Plaintiff had been married for about 5 years, that they currently live together, and have two children together, a four year old and a 3 month old. (SSUF No. 26). Ms. Alqershi indicated that she had been the victim of domestic violence by her husband about a year and a half earlier, and that as a result of that incident, a restraining order was issued against him, that he had been served with the order, and that he was not to be within 100 yards of her. (SSUF No. 27). Ms. Alqershi indicated that she had stayed at a shelter called Becky's House after the domestic violence incident but that after her stay at Becky's House, Plaintiff picked her up and they had been living together ever since, even though the restraining order was still in place. (SSUF No. 27). Ms. Alqershi told Deputy Lopatosky that on that evening, her husband had threatened to kill her, kill any responding law enforcement, and then kill himself, but that he had not done anything to her physically. (SSUF No. 28). Ms. Alqershi wanted Plaintiff arrested. (SSUF No. 28). Deputy Lopatosky also confirmed that while Ms. Alqershi appeared upset by the circumstances with her husband, she did not appear to be suffering from any type of mental health disorder. (SSUF No. 29).

Deputy Butcher conducted a records check through the Sheriff's inquiry channel, and the records check revealed there was an active domestic violence criminal protective order issued in case number C291668, listing Plaintiff as the restrained person, and Ms. Alqershi as the protected person. (SSUF No. 30). The deputies were informed through the records check that order was reported to have been served by Judge Shelton, and was set to expire on May 23, 2013, and that the terms of order prohibited Plaintiff from

- 5 -

having any contact with Ms. Alqershi.  (SSUF No. 30).  Based on the information they were provided, Deputies Lopatosky and Butcher believed in good faith that Plaintiff was in violation of the protective order.  (SSUF No. 31).

Deputy Lopatosky and Deputy Butcher made contact with Plaintiff at 3755 El Canto Dr.  (SSUF No. 32).  Plaintiff was handcuffed and complained of injury to his arm.  (SSUF No. 33).  Deputy Butcher immediately summoned the Fire Department for paramedic assistance. (SSUF No. 34).  The paramedics arrived approximately five minutes later and Plaintiff was taken via ambulance to the hospital for evaluation.  (SSUF No. 35).

### III

### ARGUMENT

A.  **Plaintiff's Municipal Federal Civil Rights Claim Fails Because There Is No Evidence Of A County Policy, Custom, or Practice That Resulted In Any Constitutional Violation**

In support of his § 1983 claim against the County, Plaintiff alleges myriad unlawful policies, customs and "habits", for which he has no proof.  Plaintiff claims the County has "unlawful policies, customs and habits of improper and inadequate hiring, training, retention, discipline and supervision of its sheriff's deputies, proximately causing the constitutional deprivations, injuries and damages alleged in the First Cause of Action."(Dkt. No. 23 SAC ¶ 39.)  Plaintiff also alleges that the County has an unlawful policy, custom or habit of permitting unlawful searches and seizures, false arrests and the unnecessary and excessive use of force by sheriff deputies and failing to take action against deputies who commit acts of excessive force. (*Id*. ¶ 40.)   Plaintiff further complains that the County has inadequate policies relating to "1) enlisting domestic violence victims to participate in contacting and arresting domestic violence suspects. 2) warrantless detentions and arrests of citizens for mere suspicions and without probable cause, 3) use of excessive force by deputies, and 4) writing false police reports as a method of covering up acts of excessive force and other improprieties by sheriff's deputies." (*Id*. ¶ 41.) Plaintiff also alleges that County and its sheriff's department "have

- 6 -

1  refused to investigate, or have inadequately investigated, numerous complaints of false

2  arrest, excessive force and unlawful searches and seizures made by citizens against its

3  sheriff's deputies over many years, including complaints that resulted in substantial jury

4  verdicts against the deputies and the County." (*Id*. ¶ 42.)

5      In *Monell v. New York City Dept. of Social Services*, the Supreme Court

6  determined that the language of § 1983 and the legislative history of the statute

7  "compel[led] the conclusion that Congress did not intend municipalities to be held liable

8  unless action pursuant to official municipal policy of some nature caused a constitutional

9  tort."  *Monell v. N.Y. City Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978).  Accordingly,

10  the Supreme Court held that those who seek to impose liability on local government

11  entities under § 1983 must prove that "action pursuant to official municipal policy" was

12  the "moving force" behind their injury. *Id*. at 691, 694.  "Official municipal policy

13  includes the decisions of a government's lawmakers, the acts of its policymaking

14  officials, and practices so persistent and widespread as to practically have the force of

15  law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  In limited circumstances, the

16  Supreme Court has also recognized that "a local government's decision not to train

17  certain employees about their legal duty to avoid violating citizens' rights may rise to the

18  level of an official government policy for purposes of § 1983."  *Id*.  It is in these

19  circumstances that municipal liability is at its "most tenuous," (*id*.) however, and the

20  standard for proving liability is strict: "the inadequacy of police training may serve as the

21  basis for § 1983 liability only where the failure to train amounts to deliberate indifference

22  to the rights of persons with whom the police come into contact."  *City of Canton v.*

23  *Harris*, 489 U.S. 378, 388  (1989).  Additionally, "[a] pattern of similar constitutional

24  violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate

25  indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (2011) *quoting*

26  *Bd. of the County Comm'Rs v. Brown,* 520 U.S. 397, 409 (1997).

27      The burden is on the plaintiff to present evidence that the allegedly

28  unconstitutional activities of the law enforcement officer were pursuant to "policy

- 7 -

statement, ordinance, regulation, or decision officially adopted and promulgated by [the entity's] officers." *Monell*, 436 U.S. at 690.  Defendant County is entitled to summary judgment of Plaintiff's *Monell* claim because Plaintiff has been allowed an adequate opportunity to conduct discovery, and has **no evidence** to meet this burden.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In fact, when Plaintiff was asked in written discovery to state all facts in support of his various "unlawful policy, custom, or habit" allegations, he stated:

> The facts of this case where several officer conspire to storm a citizen's adobe arrest him without any probable cause and then break his elbow with the use of excessive force clearly unwarranted and then filing false reports and instigating false criminal proceedings that intended only to scare and coerce justice so that they escape punishment for what they did violating every oath and promise to protect the citizens they instead violated.  After all this and you see all these officers protected by the County instead of being investigated and punished.  If you were the victim of what I am claiming what would you describe the County system as?  I know what has happened and if the officers has [sic] been investigated and remain free and unpunished then it must be the custom, policy or practice to ignore citizen's complaints.  San Diego County supported the officer's request to file erroneous charges and dropping the charges when the coercion is about to be exposed.  SD County is notorious for all aspects of these violations and if you simply do a google search of all these aggressive unlawful behaviors and demeanors of officers you will be surprised with the responses which will confirm our allegation.

(SSUF No 1-10).  The above response merely restates the allegations of the complaint and contends a "google search" will provide evidence in support of Plaintiff's *Monell* claim.  This is clearly insufficient "evidence" to avoid summary judgment of Plaintiff's 42 U.S.C. § 1983 municipal federal civil rights claim.

### B.   Lopatosky and Butcher Are Entitled To Partial Summary Judgment On Plaintiff's 42 U.S.C. § 1983 Claim

Plaintiff alleges causes of action under § 1983 against Deputies Butcher and Lopatosky for false arrest, excessive force, falsifying police reports, denial of medical

- 8 -

attention and malicious prosecution.[2]  Defendants contend they are entitled to summary

judgment on three of these five theories—false arrest, denial of medical attention, and

malicious prosecution.

> ### 1. Deputies Lopatosky and Butcher Are Entitled to Summary Adjudication of Plaintiff's § 1983 Claim For False Arrest Because There Was Probable Cause to Arrest Plaintiff For Violation of the Protective Order or Alternatively, Based on Qualified Immunity

Deputies Lopatosky and Butcher are entitled to summary judgment as to Plaintiff's

§ 1983 claim based on false arrest because the deputies were legally authorized to arrest

Plaintiff for violation of the protective order held by his wife.  In order to prove a §1983

claim for unlawful arrest under the Fourth Amendment, Plaintiff must establish

Defendants lacked probable cause to arrest him.  *See* Ninth Cir. Model Jury Instr. Civ.

9.20 ("In order to prove the seizure in this case was unreasonable, the plaintiff must

prove by a preponderance of the evidence that [he] [she] was arrested without probable

cause."); *see also Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir.

2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the

Fourth Amendment, provided the arrest was without probable cause or other

justification."); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (a

plaintiff must demonstrate the absence of probable cause to prevail on a § 1983 claim for

false arrest and imprisonment).  Probable cause to arrest "exists where, under the totality

of the circumstances known to the arresting officers, a prudent person would have

concluded that there was a fair probability that the suspect had committed a crime."  *Peng*

*v. Hu*, 335 F.3d 970, 976 (9th Cir. 2003) (internal quotations and brackets omitted); *see*

*also United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)("Probable cause to

arrest exists when officers have knowledge or reasonably trustworthy information

sufficient to lead a person of reasonable caution to believe that an offense has been or is

---

[2] On January 21, 2014, the Court issued an order dismissing Defendant Scott Lee and Plaintiff's § 1983 claim based on equal protection.  The Court also held that the SAC did not plead a separate § 1983 claim for unreasonable search and seizure, but rather that the alleged unreasonable search and seizure was pled as an element of Plaintiff's

1   being committed by the person being arrested.")  "A sufficient basis of knowledge is

2   established if the victim provides facts sufficiently detailed to cause a reasonable person

3   to believe that a crime has been committed and the named suspect was the perpetrator."

4   *Peng*, 335 F.3d at 978.

5        Here it is undisputed that Plaintiff's wife, Ms. Alqershi, had an active domestic

6   violence protective order against Plaintiff as of the date of the incident.  The order

7   provided that Plaintiff must not "harass, strike, threaten, assault…." Ms. Alqershi, that

8   Plaintiff "must have no personal, electronic, telephonic, or written contact with" Ms.

9   Alqershi, that Plaintiff must have "no contact" with Ms. Alqershi, that Plaintiff "must not

10  come within 100 yards" of Ms. Alqershi, and that Plaintiff must stay away from Ms.

11  Alqershi's home, employment, and vehicle.  Ms. Alqershi called 9-1-1 and reported that

12  she needed help at 3755 El Canto Dr., that she had a restraining order against her husband

13  Mohamad Said, but that she had gone back to him and was living with him at that

14  address.  She told the 9-1-1 dispatcher that she was afraid he was going to kill her

15  because he told her that he would kill her and kill himself if she called the cops.  Deputies

16  Lopatosky and Butcher made contact with Plaintiff at a neighbor's house two doors down

17  at 3725 El Canto Dr., where she told the 9-1-1 dispatcher she would be waiting.

18  Consistent with the information Ms. Alqershi had given to the dispatcher, Ms. Alqershi

19  told the deputies that she and Plaintiff were living together and had two children together,

20  a four year old and a 3 month old.  Ms. Alqershi indicated that she had been the victim of

21  domestic violence by her husband about a year and a half earlier, and that as a result of

22  that incident, a restraining order was issued against him and that he was not to be within

23  100 yards of her.  Deputy Butcher was aware Ms. Alqershi and Plaintiff had a history of

24  domestic violence because he had arrested Plaintiff for spousal abuse in violation of

25  Penal Code 273.5(a) back in April 2009.  Ms. Alqershi told the deputies that on that

26  evening, Mohamad had threatened to kill her, kill any responding law enforcement, and

27  then kill himself, and that she wanted Plaintiff arrested.  The deputies confirmed with the

28

excessive force cause of action.

- 10 -

Sheriff's Department, through the inquiry channel, that there was an active protective order that prohibited Plaintiff from having any contact with Ms. Alqershi, and that Plaintiff had been served with that order.

These facts are sufficient to demonstrate that there was probable cause to arrest Plaintiff for an intentional and knowing violation of the protective order pursuant to Penal Code Section 273.6(a), and under the authority of Penal Code Section 836(c)(1), which provides:

> When a peace officer is responding to a call alleging a violation of a domestic violence protective or restraining order issued under Section 527.6 of the Code of Civil Procedure, the Family Code, Section 136.2, 646.91, or paragraph (2) of subdivision (a) of Section 1203.097 of this code, Section 213.5 or 15657.03 of the Welfare and Institutions Code, or of a domestic violence protective or restraining order issued by the court of another state, tribe, or territory and *the peace officer has probable cause to believe that the person against whom the order is issued has notice of the order and has committed an act in violation of the order*, the officer shall, consistent with subdivision (b) of Section 13701,[3] *make a lawful arrest of the person without a warrant and take that person into custody whether or not the violation occurred in the presence of the arresting officer*.

Deputies Lopatosky and Butcher should be granted summary judgment as to Plaintiff's § 1983 claim because Plaintiff's arrest was supported by probable cause, and accordingly, did not violate the constitution.

Deputies Lopatosky and Butcher are further entitled to summary judgment of Plaintiff's § 1983 claim based on unlawful arrest based on qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[3] California Penal Code § 13701 requires that "[e]very law enforcement agency in this state shall develop, adopt, and implement written policies and standards for officers' responses to domestic violence calls by January 1, 1986. These policies shall reflect that domestic violence is alleged criminal conduct." Cal. Pen. Code. § 13701, subd., (a). Section 13701 further states that "[t]hese policies also shall require the arrest of an offender, absent exigent circumstances, if there is probable cause that a protective order. .

12-cv-2437-GPC(RBB)

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341(1986).  Qualified immunity is a legal issue to be decided by the court at the earliest possible time in the litigation.  *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993).  Resolving the issue of qualified immunity involves satisfying either element of a two-step inquiry.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 232-26 (2009).  A court can either determine whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right," or a court can evaluate whether the constitutional right was "clearly established." *See Saucier* 533 U.S. at 201; *Pearson*, 555 U.S. at 227.  "If the law did not put the [officials] on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

As discussed above, the facts demonstrate that Plaintiff's arrest was supported by probable cause and thus do not support a finding that Defendants violated Plaintiff's rights under the Fourth Amendment, and accordingly, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  However, even if the Court were to find Plaintiff has alleged sufficient facts to plead a constitutional violation in this case, the Deputies are nonetheless protected by the doctrine of qualified immunity because a reasonable officer in each of their positions could have believed that that probable cause existed to arrest Plaintiff based on Ms. Alqershi's statements and the Deputies' verification of the protective order.

Thus, the court should apply qualified immunity here and grant summary judgment in favor of Deputies Lopatosky and Butcher as to Plaintiff's § 1983 claim based on

.has been violated.  *Id*. at § 13701, subd., (b).

1   unlawful arrest.

2          **2.**     **Plaintiff Cannot Establish Deputies Lopatosky and Butcher Were**
3                  **Deliberately Indifferent to His Medical Needs, or Alternatively,**
                 **the Deputies Are Entitled to Summary Adjudication of Plaintiff's**
4                  **§ 1983 Claim Based on Inadequate Medical Attention Based on**
                 **Qualified Immunity**

5

6        "The due process clause requires responsible governments and their agents to

7 secure medical care for persons who have been injured while in police custody."

*Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986) (citing *City of*
8
*Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The Due Process Clause of
9
the Fourteenth Amendment guarantees a pretrial detainee the right to receive adequate
10
medical care, and that right is violated if officials are deliberately indifferent to the
11
detainee's serious medical needs. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232,
12
1242–43 (9th Cir. 2010); *Revere*, 463 U.S. at 244-45.  "Deliberate indifference is a high
13
legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  Deliberate
14
indifference exists when an official knows of and disregards a serious medical condition,
15
*i.e.*, when an official is "aware of facts from which the inference could be drawn that a
16
substantial risk of serious harm exists" and actually draws that inference. *Farmer v.*
17
*Brennan*, 511 U.S. 825, 837 (1994).  A police officer's constitutional duty can be fulfilled
18
"by either promptly summoning the necessary medical help or by taking the injured
19
detainee to a hospital." *Maddox*, 792 F.2d at 1415 (citing *Revere*, 463 U.S. at 245);
20
       This is exactly what the evidence demonstrates was done in this case.  As soon as
21
Plaintiff complained his arm had been injured, Deputy Butcher immediately summoned
22
the Fire Department for paramedic assistance.  The paramedics arrived approximately
23
five minutes later and Plaintiff was taken via ambulance to the hospital for evaluation.
24
Plaintiff cannot establish Deputies Lopatosky or Butcher were deliberately indifferent to
25
his medical needs.
26
       Alternatively, Deputies Lopatosky and Butcher are entitled to qualified immunity
27
because a reasonable officer in each of their positions could have believed that
28

- 13 -

1    immediately requesting paramedic assistance for Plaintiff and causing Plaintiff to be

2    transported to the hospital via ambulance was sufficient to fulfill their constitutional

3    obligations.  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[Q]ualified immunity shields

4    agents… if 'a reasonable officer could have believed [the action] to be lawful, in light of

5    clearly established law and the information the [arresting] officer possessed.'" *quoting*

6    *Anderson*, 483 U.S. at 641; see also *Maddox*, 792 F.2d at 1415; *Revere*, 463 U.S. at 245;

7    Tatum v. City & County of San Francisco, 441 F.3d 1090, 1099 (9th Cir. Cal. 2006)("a

8    police officer who promptly summons the necessary medical assistance has acted

9    reasonably for purposes of the Fourth Amendment").

10   ### 3.   Deputies Lopatosky and Butcher Are Entitled to Summary Adjudication of Plaintiff's § 1983 Claim Based Malicious

11   Prosecution

12        Claims of malicious prosecution are generally not cognizable under § 1983 if a

13   remedy is available for such a claim within the state judicial system. *Usher v. City of Los*

14   *Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987). "However, an exception exists to the

15   general rule when a malicious prosecution is conducted with the intent to deprive a

16   person of equal protection of the laws or is otherwise intended to subject a person to a

17   denial of constitutional rights." *Id.* at 562 (internal citations and quotations omitted).

18   Therefore, to prove a claim for malicious prosecution under § 1983, Plaintiff must: (a)

19   satisfy the requirements for a claim of malicious prosecution under California law; and

20   (b) demonstrate that the malicious prosecution was conducted with the intent to deprive

21   him his constitutional rights. *See id*; *see also Freeman v. City of Santa Ana*, 68 F.3d

22   1180, 1189 (9th Cir. 1995) (plaintiff "must show that the defendants prosecuted [him]

23   with malice and without probable cause, and that they did so for the purpose of denying

24   [him] equal protection or another specific constitutional right.").  To establish a cause of

25   action for malicious prosecution under California law, Plaintiff must demonstrate "that

26   the prior action (1) was initiated by or at the direction of the defendant and legally

27   terminated in the plaintiff's favor, (2) was brought without probable cause, and (3) was

28   initiated with malice."  *Siebel v. Mittlesteadt*, 41 Cal. 4th 735, 740  (2007).

1    Plaintiff was charged with violation of Penal Code sections 69/17(b)(4), 273.6(a),

2    and 166(c)(1) in connection with the incident that is the subject of this lawsuit.  As an

3    initial matter, as noted above, in section B.1, *supra*, there was, at a minimum probable

4    cause to arrest Plaintiff for violation of the protective order – which was charged by the

5    District Attorney's Office as violation of Penal Code sections 273.6(a) and 166(c)(1).[4]

6    Even if the facts did not so clearly establish probable cause, however, the Ninth

7    Circuit has recognized that "[f]iling of a criminal complaint immunizes investigating

8    officers ... from damages suffered thereafter because it is presumed that the prosecutor

9    filing the complaint exercised independent judgment in determining that probable cause

10   for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.

11   1981) (Smiddy I).  In order to overcome this presumption, Plaintiff is required to produce

12   evidence that "the district attorney was subjected to unreasonable pressure by the police

13   officers, or that the officers knowingly withheld relevant information with the intent to

14   harm [him], or that the officers knowingly supplied false information."  *Smiddy v.*

15   *Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986) (*Smiddy II*).  A plaintiff's contradictory

16   account of events, however, is not sufficient to overcome the presumption. *Newman v.*

17   *County of Orange*, 457 F.3d 991, 994 (9th Cir. 2006).  "In the absence of evidence to

18   rebut the presumption, the presumption [is] sufficient to require summary judgment for

19   the defendants." *Smiddy II*, 803 F.2d at 1471.  Defendants are entitled to summary

20   judgment as to Plaintiff's § 1983 claim based on malicious prosecution because he has no

21   evidence that either Deputy Lopatosky or Deputy Butcher took any action to compromise

22   the prosecutor's independent judgment, and thus he has no evidence to overcome the

23   *Smiddy* presumption.

24   ///

25   ///

26

27   _____

     [4] Defendants contend that there was additionally probable cause for Deputy

28   Lopatosky to cite Plaintiff with violation of Penal Code section 69—which was charged
     by the District Attorney's Office as a violation of Penal Code section 17(b)(4)  for
     Plaintiff's attempt to kick him in the face and for Plaintiff's resistance to arrest, but these

- 15 -

Plaintiff additionally has no evidence that the prosecution was initiated with malice. Rather, the evidence supports a finding that there was probable cause for Plaintiff's arrest.

**C.    Defendants Are Entitled To Summary Judgment As To Plaintiff's Claim For False Arrest/False Imprisonment.**

Plaintiff's complaint pleads a claim for false arrest against all of the Defendants based on the same facts pled in support of his § 1983 claim for false arrest.  California law "protects a law enforcement officer from liability for false arrest . . . where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful."  *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir. 2003); Cal. Pen. Code § 847(b).  "An arrest is valid if supported by probable cause."  *People v. Kraft*, 23 Cal.4th 978, 1037 (2000).  "Probable cause to arrest exists if facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime."  As set forth in section B.1, *supra*, Defendants Lopatosky and Butcher are entitled to summary judgment as to Plaintiff's eighth cause of action for false arrest because Plaintiff's arrest was supported by probable cause, and was thus "lawful" under California law.  For these same reasons, the County is likewise entitled to summary judgment.  *See* Cal. Gov't Code § 815.2.

**D.    All Defendants Are Entitled To Summary Judgment As To Plaintiff's Claim For Violation Of Civil Code § 52.1.**

As a fourth cause of action, Plaintiff alleges he is entitled to damages pursuant to Civil Code § 52.1 for the Deputy Defendants' violation of his rights under the First and Fourth Amendments, particularly the "acts of excessive force, unlawful detention, false arrest and retaliation." (SAC ¶ 79).

"There are two distinct elements for a section 52.1 cause of action. A plaintiff must show (1) intentional interference or attempted interference with a state or federal

issues are factually disputed and are thus not raised herein.

- 16 -

12-cv-2437-GPC(RBB)

constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 2015 Cal. App. LEXIS 116, 40 (Cal. App. 3d Dist. Feb. 6, 2015); *see also Jones v. Kmart Corp*., 17 Cal. 4th 329, 334 (1998)( "§ 52.1 requires an attempted or completed act of interference with a legal right, accompanied by a form of coercion"). "The essence of a [Section 52.1] claim is that the defendant, by the specified improper means (i.e., threats, intimidation[,] or coercion) tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 956 (2012) (internal quotations and citations omitted). In other words, "[a] cause of action under the [statute] requires a predicate—the application of threat, intimidation[,] or coercion and an object—interference with a constitutional or statutory right." *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 953 (E.D. Cal. 2011).

Defendants are also entitled to summary judgment on Plaintiff's claim under 52.1 because Plaintiff cannot establish the predicate application of threat, intimidation or coercion independent of that inherent in the constitutional violations he alleges that is required of such a claim. *See e.g., Bender v. County of Los Angele*s, 217 Cal. App. 4th 968, 978 (2013) (Bane Act applied because "there was a Fourth Amendment violation— an arrest without probable cause—accompanied by the beating and pepper spraying of an unresisting plaintiff, i.e., coercion that is in no way inherent in an arrest, either lawful or unlawful."); *see also Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th at 959 (where the coercion alleged is only that which is inherent in the constitutional violation alleged, the statutory requirement of "threats, intimidation, or coercion" is not met).

The undisputed facts offered in support of this motion demonstrate that Plaintiff Plaintiff cannot establish a constitutional violation based on the theories of false arrest, deliberate indifference to medical needs, or malicious prosecution, and the only other constitutional violation Plaintiff alleges – excessive force—cannot in and of itself, also comprise an alleged constitutional interference that gives rise to liability under § 52.1.

- 17 -

1  The alleged conduct must be shown to have been committed for the purpose of

2  interfering with some other constitutional right.

3                                                    IV

4                                            **CONCLUSION**

5          For the foregoing reasons, Defendants respectfully request that this Court issue an

6  order granting partial summary judgment in favor of  Defendants as requested herein.

7

8

9  DATED:  February 23, 2015                 THOMAS E. MONTGOMERY, County Counsel

10                                            By: s/ STEPHANIE KARNAVAS, Senior Deputy
                                             Attorneys for Defendants County of San Diego,
11                                           Patrick Lopatosky,and Brian Butcher
                                             E-mail: stephanie.karnavas@sdcounty.ca.gov
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                          12-cv-2437-GPC(RBB)