1

2

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                **SOUTHERN DISTRICT OF CALIFORNIA**

9   MOHAMAD ALI SAID,                  CASE NO. 12cv2437-GPC(RBB)

10                         Plaintiff,   **ORDER GRANTING IN PART AND
                                        DENYING IN PART**
11        vs.                          **DEFENDANTS' MOTION FOR
                                        PARTIAL SUMMARY JUDGMENT**
12
    COUNTY OF SAN DIEGO, DEPUTY
13  SHERIFF PATRICK LOPATOWKY,
    DEPUTY SHERIFF BRIAN
14  BUTCHER, DEPUTY SHERIFF LEE        [Dkt. No. 52.]
    SCOTT, and DOES 1-50,
15  INCLUSIVE,

16                        Defendants.

17

18        Before the Court is Defendants County of San Diego, Patrick Lopatosky and

19  Brian Butcher's motion for partial summary judgment filed on February 23, 2015.

20  (Dkt. Nos. 52, 55[1].)  Plaintiff Mohamad Said filed an amended opposition on March

21  23, 2015.  (Dkt. No. 55.)  A reply was filed on April 1, 2015.  (Dkt. No. 63.)  After a

22  review of the briefs, supporting documentation, and the applicable law, the Court

23  GRANTS in part and DENIES in part Defendants' motion for partial summary

24  judgment.

25                           **Procedural Background**

26        On October 9, 2012, Plaintiff filed a 42 U.S.C. § 1983 civil rights complaint

27  ───────────────

28        [1]On February 24, 2015, Defendants filed an amended memorandum of points and
    authorities and amended separate statement of undisputed material facts. (Dkt. No. 55.)

against County of San Diego ("County"), Deputy Sheriff Patrick Lopatowsky ("Lopatowsky"), Deputy Sheriff Brian Butcher ("Butcher"), and Deputy Sheriff Scott Lee (erroneously named as Lee Scott). (Dkt. No. 1.)  On May 15, 2013, the Court granted Defendants' motion to dismiss the complaint with leave to amend. (Dkt. No. 16.)  On June 12, 2013, Plaintiff filed a first amended complaint. (Dkt. No. 17.)  On October 30, 2013, the Court granted Defendants' motion to dismiss the first amended complaint with one final opportunity to amend. (Dkt. No. 22.)  On November 19, 2013, Plaintiff filed a second amended complaint ("SAC"). (Dkt. No. 23.)  On January 21, 2014, the Court granted in part and denied in part Defendants' motion to dismiss. (Dkt. No. 31.)  Specifically, the Court granted Defendants' motion to dismiss the cause of action for equal protection and all causes of action against Defendant Scott Lee, and the Court denied Defendants' motion to dismiss the causes of action for excessive force, false arrest, denial of medical attention, malicious prosecution, § 1983 cause of action against the County of San Diego and all state law causes of action.[2] (Id.)

Defendants now seek partial summary judgment on the causes of action against the County of San Diego for violation of 42 U.S.C. § 1983 and against Defendants Lopatowsky and Butcher for unlawful arrest, inadequate medical care, and malicious prosecution under § 1983 and state law claims for false arrest and violation of California Civil Code section 52.1.

**Factual Background**

On June 16, 2009, a domestic violence misdemeanor complaint for the use of force and violence and the infliction of injury on his spouse, Walla Said, aka Walaa Alqershi ("Alqershi") was filed against Plaintiff in the Superior Court of California, County of San Diego, East County Division. (Dkt. No. 57, Ds' NOL, Ex. 1.)  The complaint alleged three counts consisting of: 1) corporal injury to spouse and/or

---

[2]The state law causes of action against all Defendants consist of negligence, battery, false arrest and violation of California Civil Code section 52.1. (Dkt. No. 23, SAC.)

roommate in violation of California Penal Code ("Penal Code") section 17(b)(4); 2) battery of a current or former significant other in violation of Penal Code section 243(e)(1); and 3) battery in violation of Penal Code section 242. (Id.)  A criminal protective order against Plaintiff in favor of Alqershi as the protected person was issued on July 13, 2009. (Id., Ex. 2.) On March 24, 2010, a jury found Plaintiff guilty of the crime of battery of a significant other in violation of Penal Code section 243(e)(1), and simple battery in violation of Penal Code section 242. (Id., Ex. 4.) On May 24, 2010, Plaintiff was sentenced to, among other things, three years of summary probation, a condition of which was compliance with a criminal protective order that prohibited Plaintiff from having any personal, electronic, telephonic, or written contact with Alqershi or from coming within 100 yards of her. (Id., Exs. 4, 5.) The protective order was to expire on May 23, 2013. (Id., Ex. 5.)

Plaintiff was informed of the meaning of the protective order at his sentencing hearing. (Dkt. No. 52-4, Karnavas Decl., Ex. 7 (CD audio recording of Plaintiff's sentencing on 5/24/10.))  The sentencing judge explained to Plaintiff that under the protective order, even if Alqershi called him, he must hang up the phone and walk away. (Id.) At his deposition, Plaintiff admitted that he understood his sentence and that he was subject to a full protective order and was to stay away from Alqershi. (Dkt. No. 52-4, Karnavas Decl., Ex 4, Said Depo. at 144:12-17; 146:21-24; 170:8-10; 176:22-177:4; 177:24-178:24; 180:10-14; 185:2-7.) He was also aware that only the Court could rescind the protective order and that neither he nor Alqershi could do it on their own. (Id. at 185:2-7.)  Plaintiff had an Arabic interpreter at his trial and sentencing. (Id. at 144:12-17.)  Subsequently, Alqershi returned to Plaintiff and became pregnant with Plaintiff's second child, a daughter, to whom she gave birth in October 2011. (Id. at 222:2-24.)

On January 24, 2012, at approximately 5:51p.m., the Sheriff's Department communications center received a 911 call from a woman identifying herself as Walaa

[12cv2437-GPC(RBB)]

Alqershi. (Dkt. No. 52-7, Harb Decl., Ex. A, 911 CD audio recording.)  She stated that she was in the house with Plaintiff and lives with him.  (Id.)  She was fearful because he threatened to kill her if she called the cops, and then kill himself.  (Id.)  Alqershi explained that she had a restraining order against her husband, but was living with him and that he was driving her crazy, and she was afraid he was going to kill her.  (Id.)  She also said she just recently came back from a mental institution and it was her fault that she went back with him.  (Id.)  Alqershi requested law enforcement assistance and while on the phone, she indicated she was leaving her house located at 3755 El Canto Dr. and was walking to her neighbor's house located at 3725 El Canto Dr.  (Id.)

On the evening of January 24, 2012, Butcher and Lopatosky received a radio call to respond to 3755 El Canto Dr., Spring Valley, California to contact an individual who may have been "5150", in other words, a person who, as a result of a mental health disorder, is a danger to others, or to himself or herself, or is gravely disabled. (Dkt. No. 52-5, Butcher Decl. ¶ 2; Dkt. No. 52-6, Lopatosky Decl. ¶ 2.)  At some point, the contact address was changed to 3725 El Canto Dr. which is a house a couple of houses down from the original address.  (Dkt. No. 52-5, Butcher Decl. ¶ 2; Dkt. No. 52-6, Lopatosky Decl. ¶ 2.)  Psychiatric Emergency Response Team ("PERT") clinician, Cynthia Van Lom ("Van Lom"), was assigned to work with Butcher and was riding with him in his patrol vehicle. (Dkt. No. 52-5, Butcher Decl. ¶ 2.)  Butcher and Van Lom arrived first at 3725 El Canto Dr. and made contact with Alqershi.  (Id.)  They determined that Alqershi was not "5150" but was upset with her husband.  (Id.)  Butcher was aware that Alqershi and her husband had a history of domestic violence because he had arrested Plaintiff for spousal abuse in violation of Penal Code section 273.5(a) back in April 2009.  (Id.)  Alqershi told Butcher and Van Lom that she and Plaintiff had been living together, and that on that evening, Plaintiff had threatened to kill her and any cops that showed up if she called the cops.  (Id. ¶ 3.)  Alqershi wanted Plaintiff arrested.  (Id.)    Lopatosky arrived at the scene shortly after Butcher and Van

Lom. (Id. ¶ 4.) Butcher told him that he had spoken with Alqershi, and that he believed this was a violation of a restraining order call. (Dkt. No. 52-5, Butcher Decl. ¶ 4; Dkt. No. 52-6, Lopatosky Decl. ¶ 2.) Lopatosky took over as the primary deputy on the scene and also spoke directly to Alqershi. (Dkt. No. 52-5, Butcher Decl. ¶ 4; Dkt. No. 52-6, Lopatosky Decl. ¶ 2-3.) Alqershi told Lopatosky that she and Plaintiff had been married for about 5 years, that they currently live together, and have two children together, a four year old and a 3 month old. (Dkt. No. 52-6, Lopatosky Decl. ¶ 2-3.) Alqershi indicated that she had been the victim of domestic violence by her husband about a year and a half earlier, and that as a result of that incident, a restraining order was issued against him, that he had been served with the order, and that he was not to be within 100 yards of her. (Dkt. No. 52-6, Lopatosky Decl. ¶ 3.) Alqershi indicated that she had stayed at a shelter called Becky's House after the domestic violence incident but that after her stay at Becky's House, Plaintiff picked her up and they had been living together ever since, even though the restraining order was still in place. (Id.) Alqershi told Lopatosky that on that evening, her husband had threatened to kill her, kill any responding law enforcement, and then kill himself, but that he had not done anything to her physically. (Id.) Alqershi wanted Plaintiff arrested. (Id.) Lopatosky also confirmed that while Alqershi appeared upset by the circumstances with her husband, she did not appear to be suffering from any type of mental health disorder. (Id.)

Butcher conducted a records check through the Sheriff's inquiry channel, and the records check revealed there was an active domestic violence criminal protective order issued in case number C291668, listing Plaintiff as the restrained person, and Alqershi as the protected person. (Dkt. No. 52-5, Butcher Decl. ¶ 5.) The protective order was set to expire on May 23, 2013, and the terms of the order prohibited Plaintiff from having any contact with Alqershi. (Id.)

Lopatosky and Butcher went to contact Plaintiff at 3755 El Canto Dr. (Dkt. No.

[12cv2437-GPC(RBB)]

52-5, Butcher Decl. ¶ 6; Dkt. No. 52-6, Lopatosky Decl. ¶ 5.)  Plaintiff was handcuffed and thereafter complained of injury to his arm.  (Dkt. No. 52-5, Butcher Decl. ¶ 6; Dkt. No. 52-6, Lopatosky Decl. ¶ 5.)  Deputy Butcher immediately summoned the Fire Department for paramedic assistance.  (Dkt. No. 52-5, Butcher Decl. ¶ 6; Dkt. No. 52-6, Lopatosky Decl. ¶ 5.)  The paramedics arrived approximately five minutes later and Plaintiff was taken to the hospital for evaluation.  (Dkt. No. 52-5, Butcher Decl. ¶ 6; Dkt. No. 52-6, Lopatosky Decl. ¶ 5.)

In his declaration, Plaintiff states that his ex-wife Alqershi was alcohol and drug dependent and she became uncontrollable and started running away from home.  (Dkt. No. 60-3, Said Decl. ¶ 3.)  He alleges she fabricated stories against him in order to show Plaintiff was a villain.  (Id. ¶ 5.)  Plaintiff also states that he was never served with a copy of the protective order and that he did not respond to the judge's question asking whether he understood the order.  (Id. ¶ 6.)  In fact, Plaintiff claims he asked for an explanation but the judge stated that someone else will explain; however, Plaintiff was never contacted.  (Id.)  He also states that Alqershi did not live at the house and she was there for a few minutes because he did not allow her to be near the children because child protective services did not want her near the children.  (Id. ¶ 8.)  Plaintiff states that he never threatened his ex-wife or the officers.  (Id. ¶ 9.)

## Discussion

**A.   Legal Standard on Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact

1    is material when it affects the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>,

2    477 U.S. 242, 248 (1986).

3       The moving party bears the initial burden of demonstrating the absence of any

4    genuine issues of material fact.  <u>Celotex Corp.</u>, 477 U.S. at 323.  The moving party can

5    satisfy this burden by demonstrating that the nonmoving party failed to make a

6    showing sufficient to establish an element of his or her claim on which that party will

7    bear the burden of proof at trial.  <u>Id.</u> at 322-23.  If the moving party fails to bear the

8    initial burden, summary judgment must be denied and the court need not consider the

9    nonmoving party's evidence.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60

10    (1970).

11       Once the moving party has satisfied this burden, the nonmoving party cannot rest

12    on the mere allegations or denials of his pleading, but must "go beyond the pleadings

13    and by her own affidavits, or by the 'depositions, answers to interrogatories, and

14    admissions on file' designate 'specific facts showing that there is a genuine issue for

15    trial.'"  <u>Celotex</u>, 477 U.S. at 324.  If the non-moving party fails to make a sufficient

16    showing of an element of its case, the moving party is entitled to judgment as a matter

17    of law.  <u>Id.</u> at 325.  "Where the record taken as a whole could not lead a rational trier

18    of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

19    <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  In

20    making this determination, the court must "view[] the evidence in the light most

21    favorable to the nonmoving party."  <u>Fontana v. Haskin</u>, 262 F.3d 871, 876 (9th Cir.

22    2001).  The Court does not engage in credibility determinations, weighing of evidence,

23    or drawing of legitimate inferences from the facts; these functions are for the trier of

24    fact.  <u>Anderson</u>, 477 U.S. at 255.

25    **B.**    **§ 1983 <u>Monell</u> Claim as to County of San Diego**

26       Defendant County of San Diego argues that Plaintiff makes numerous allegations

27    of unlawful policies, customs and habits but has provided no evidentiary facts to

28

1    support the elements of a Monell[3] claim.  Plaintiff opposes.

2         Cities, counties and other local government entities are subject to claims under

3    42 U.S.C. § 1983.  Monell v. New York City Dep't of Social Servs., 436 U.S. 658

4    (1978).  While municipalities, their agencies and their supervisory personnel cannot be

5    held liable under § 1983 on any theory of respondeat superior or vicarious liability,

6    they can, however, be held liable for deprivations of constitutional rights resulting from

7    their formal policies or customs.  Monell, 436 U.S. at 691-693.  Plaintiffs must

8    establish that "the local government had a deliberate policy, custom, or practice that

9    was the moving force behind the constitutional violation [they] suffered."  AE ex rel.

10   Hernandez v. Count of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (citing Whitaker v.

11   Garcetti, 486 F.3d 572, 581 (9th Cir. 2007)).

12        The elements of a Monell claim are (1) plaintiff was deprived of a constitutional

13   right; (2) the municipality has a policy; (3) the policy amounts to deliberate

14   indifference to plaintiff's constitutional right; and (4) the policy is the moving force

15   behind the constitutional violation.  Dougherty v. City of Covina, 654 F.3d 892, 900

16   (9th Cir. 2011) (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432,

17   438 (9th Cir.1997)).

18        A public entity and supervisory officials may be held liable when

19   "implementation of . . . official policies or established customs inflicts the

20   constitutional injury" or when a failure to act amounts to "deliberate indifference to a

21   constitutional right" or when "an official with final policy-making authority . . .ratifies

22   a subordinate's unconstitutional decision or action.  Clouthier v. County of Contra

23   Costa, 591 F.3d 1232, 1249 (9th Cir. 2010).

24        A "policy" is a "deliberate choice to follow a course of action . . . made from

25   among various alternatives by the official or officials responsible for establishing final

26   policy with respect to the subject matter in question."  Fogel v. Collins, 531 F.3d 824,

27   _____

28        [3]Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978).

834 (9th Cir. 2008); <u>Long v. Cnty. of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988); <u>Los Angeles Police Protective League v. Gates</u>, 907 F.2d 879, 890 (9th Cir. 1990); <u>see also</u> <u>Bouman v. Block</u>, 940 F.2d 1211, 1231–32 (9th Cir. 1991). Random acts or isolated events are not sufficient to establish custom. <u>Gates,</u> 907 F.2d at 890.

In the second amended complaint, Plaintiff alleges that the County has "unlawful policies, customs and habits of improper and inadequate hiring, training, retention, discipline and supervision of its sheriff's deputies, proximately causing the constitutional deprivations, injuries and damages alleged in the First Cause of Action." (Dkt. No. 23 SAC ¶ 39.) He also alleges that the Defendant has an unlawful policy, custom or habit permitting unlawful searches and seizures, false arrests and the unnecessary and excessive use of force by sheriff deputies and failing to take action against deputies who commit acts of excessive force. (<u>Id.</u> ¶ 40.) He further specifically complains that the County has inadequate policies relating to "1) enlisting domestic violence victims to participate in contacting and arresting domestic violence suspects. 2) warrantless detentions and arrests of citizens for mere suspicions and without probable cause. 3) use of excessive force by deputies and 4) writing false police reports as a method of covering up acts of excessive force and other improprieties by sheriff's deputies." (<u>Id.</u> ¶ 41.) Plaintiff also alleges that County and its sheriff's department "have refused to investigate, or have inadequately investigated, numerous complaints of false arrest, excessive force and unlawful searches and seizures made by citizens against its sheriff's deputies over many years, including complaints that resulted in substantial jury verdicts against the deputies and the County." (<u>Id.</u> ¶¶ 39, 42.)

Defendant County argues that Plaintiff asserts numerous allegations of "unlawful

[12cv2437-GPC(RBB)]

policies, customs and habits" but has presented no evidentiary support during discovery. In support, the County cites to the Plaintiff's unresponsive, argumentative answers to interrogatories that asked Plaintiff to state the facts to support his <u>Monell</u> claim against the County.   (Dkt. No. 52-4, Karnavas Decl., Ex. 1.)   In opposition, Plaintiff fails to oppose the motion for partial summary judgment with specific facts from affidavits, depositions, answers to interrogatories, and/or admissions on file showing that there is a genuine issue for trial.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324. First, Plaintiff's brief does not address any of the allegations presented in his complaint.[4] Second, he merely presents argument and presents a conclusory statement that "much more evidence and facts were discovered consequently that make Defense argument futile." (Dkt. No. 60-1, P's Response to Ds' SUF at 1.)  No facts are alleged to support any of the allegations in the second amended complaint against the County for a § 1983 cause of action.

In his own statement of undisputed facts, Plaintiff cites to the arrest report and deposition of Butcher and Lopatosky[5] and presents his interpretation of the facts and summarily asserts that Defendants misreported or falsified the incident. (Dkt. No. 60-2, P's SUF Nos. 1-7.)   However, even if Plaintiff's interpretation of the arrest report is correct, the arrest report, itself, concerning this incident is not sufficient to demonstrate the County had a widespread custom or policy that deprived Plaintiff of his constitutional rights.  <u>See</u> <u>Gates</u>, 907 F.2d at 890.

Here, Plaintiff has failed to produce any factual support of his claim of a <u>Monell</u>

---

[4]In fact, he appears to raise a new allegation that the County of San Diego "failed to train its officers and prosecutors adequately about their duty to produce exculpatory evidence such as the name of an eye witness or the reason for the initial visit which has caused this new attorney a lot of time wasted to get information readily available." (Dkt. No. 60 at 6.)   Even if this allegation were in the second amended complaint, Plaintiff has failed to provide any factual support.

[5]The Court notes that while Plaintiff cites to Lopatosky's deposition, the relevant portions of his deposition are not contained in the Shashaty declaration. (Dkt. No. 60-4.)   While some portions of Lopatosky's deposition are provided in Defendants' motion, many citations to support Plaintiff's arguments are not.

1   claim against the County of San Diego. <u>See</u> <u>Celotex</u>, 477 U.S. at 324-25. Accordingly,

2   the Court GRANTS Defendant County of San Diego's motion for partial summary

3   judgment on the § 1983 cause of action.

4   **C.      42 U.S.C. § 1983 Causes of Action as to Defendants Lopatosky and Butcher**

5          Defendants Butcher and Lopatosky seek summary judgment on the causes of

6   action for unlawful arrest, deliberate indifference to serious medical needs, and

7   malicious prosecution under 42 U.S.C. § 1983.

8        **1.     Unlawful Arrest**

9         "A claim for unlawful arrest is cognizable under § 1983 as a violation of the

10  Fourth Amendment, provided the arrest was without probable cause or other

11  justification." <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 918 (9th Cir. 2012). Probable

12  cause exists when the officer has "a reasonable belief, evaluated in light of the officer's

13  experience and the practical considerations of everyday life, that a crime has been, is

14  being, or is about to be committed." <u>Hopkins v. City of Sierra Vista</u>, 931 F.2d 524, 527

15  (9th Cir. 1991) (citation and internal quotations omitted). "Probable cause exists if the

16  arresting officers 'had knowledge and reasonably trustworthy information of facts and

17  circumstances sufficient to lead a prudent person to believe that [the arrestee] had

18  committed or was committing a crime.' " <u>Maxwell v. Cnty. of San Diego</u>, 697 F.3d

19  941, 951 (9th Cir. 2012) (quoting <u>United States v. Ricardo D.</u>, 912 F.2d 337, 342 (9th

20  Cir.1990)).

21         "In establishing probable cause, officers may not solely rely on the claim of a

22  citizen witness that he was a victim of a crime, but must independently investigate the

23  basis of the witness' knowledge or interview other witnesses." <u>Arpin v. Santa Clara</u>

24  <u>Valley Transp. Agency</u>, 261 F.3d 912, 925 (9th Cir. 2001) (citing <u>Fuller v. M.G.</u>

25  <u>Jewelry</u>, 950 F.2d 1437, 1444 (9th Cir. 1991)). A sufficient basis of knowledge is

26  established if the victim provides "facts sufficiently detailed to cause a reasonable

27  person to believe a crime had been committed and the named suspect was the

28

[12cv2437-GPC(RBB)]

perpetrator." <u>Peng v Mei Chin Penghu</u>, 335 F.3d 970, 979 (9th Cir. 2003) (quoting <u>Fuller</u>, 950 F.2d at 1444).

The "presence of a factual dispute regarding a victim's complaint at the scene of an alleged domestic disturbance does not defeat probable cause if: 1) the victim's statements are sufficiently definite to establish that a crime has been committed; and 2) the victim's complaint is corroborated by either the surrounding circumstances or other witnesses." <u>Id.</u>

In this case, Plaintiff was arrested, among other things, for violating a protective order pursuant to California Penal Code section 166(c)(1),[6] and 273.6(a).[7]   (Dkt. No. 57, Ds' NOL, Ex. 6.) In support of Defendants' argument that they had probable cause to arrest Plaintiff, they cite to California Penal Code section 836(c).

California Penal Code Section 836(c) provides:

> When a peace officer is responding to a call alleging a violation of a domestic violence protective or restraining order . . .and the peace officer has probable cause to believe that the person against whom the order is issued has notice of the order and has committed an act in violation of the order, the officer shall . . . make a lawful arrest of the person without a warrant and take that person into custody whether or not the violation occurred in the presence of the arresting officer. The officer shall, as soon as possible after the arrest, confirm with the appropriate authorities or the Domestic Violence Protection Order Registry . . .that a true copy of the protective order has been registered, unless the victim provides the officer with a copy of the protective order.

Cal. Penal Code § 836(c)(1). Under state law, a peace officer may make a lawful arrest without a warrant if the officer has probable cause to believe that the offender has

---

[6]California Penal Code section 166(c)(1) provides, "[n]otwithstanding paragraph (4) of subdivision (a), a willful and knowing violation of a protective order or stay-away court order described as follows shall constitute contempt of court, a misdemeanor . . . ." Cal. Penal Code § 166(c)(1).

[7]California Penal Code section 273.6(a) provides: (a) Any intentional and knowing violation of a protective order . . . is a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in a county jail for not more than one year, or by both that fine and imprisonment. Cal. Penal Code § 273.6(a)

[12cv2437-GPC(RBB)]

1  notice of the protective order and has committed an act in violation of the protective

2  order, even if the violation did not occur in the officer's presence.  Id.

3          Alqershi called 911 and reported that she needed help because she was afraid

4  Plaintiff was going to kill her because he threatened to kill her and kill himself if she

5  called the cops.  According to the 911 call, she initially called from inside the home

6  where Plaintiff was in another room, located at 3755 El Canto Drive, and then during

7  the call, she walked two houses down to 3725 El Canto Drive to go to a neighbor's

8  house where she told the dispatcher she would be waiting.  She informed the dispatcher

9  that she had a restraining order against Plaintiff but that she was living with him.

10  When the Deputy Defendants arrived, Alqershi told them that she and Plaintiff were

11  living together and had two young children.  She informed them that she was the victim

12  of a domestic violence by her husband about a year and a half earlier, and as a result,

13  a restraining order was issued against him.  She informed them that Plaintiff was aware

14  of the protective order.  She told them that Plaintiff had threatened to kill her, kill any

15  officers if she called them and then kill himself.  She wanted him arrested.  Defendant

16  Butcher then conducted a records check through the Sheriff's inquiry channel, and the

17  records check revealed there was an active domestic violence criminal protective order

18  issued in case number C291668, listing Plaintiff as the restrained person, and Alqershi

19  as the protected person which was set to expire on May 23, 2013.  (Dkt. No. 52-5,

20  Butcher Decl. ¶ 5.)  The terms of the protective order prohibited Plaintiff from having

21  any contact with Alqershi.  (Id.)

22          At the time of the arrest, the Deputy Defendants were told that there was a

23  protective order against Plaintiff in favor of Alqershi, Alqersi informed them that

24  Plaintiff threatened to kill her if she called the police, and that Plaintiff had notice of

25  the protective order.  Moreover, Defendant Butcher was aware that Plaintiff had been

26  arrested in 2009 for domestic violence.  Based on this information, Defendants

27  conducted a records search to corroborate Alqershi's allegations concerning the

28

[12cv2437-GPC(RBB)]

1   protective order.  A records search confirmed Alqershi had an active domestic violence
2   protective order against Plaintiff which was still effective on the date of the incident.
3    The Deputy Defendants had a sufficient basis of knowledge based on the detailed facts
4   provided by Alqershi and had corroborating evidence of the protective order to have
5   a reasonable belief that Plaintiff violated the protective order.   Thus, the Court
6   concludes that Deputy Defendants had probable cause to arrest Plaintiff.

7        In his opposition brief, Plaintiff only addresses the legal standard on false arrest
8   without citation to authority.  (Dkt. No. 60 at 3-4.)  He does not dispute Defendants'
9   statement of undisputed facts with specific evidence in the record and only presents
10   arguments.  In his declaration, Plaintiff states that he was at home minding his own
11   business and taking care of his children and did not violate the protective order.  It was
12   Alqershi who came to his house and initiated the contact and made the 911 call.
13   According to Plaintiff, the Deputy Defendants did not provide any proof of any
14   misconduct.  He also alleges that he did not affirmatively respond to the judge's
15   question whether he understood the protective order and in fact was unable to
16   comprehend what was happening.  Therefore, he did not agree to the full protective
17   order sentenced by the state court judge.  However, Plaintiff's undisputed facts are not
18   supported.

19        The Court listened to the 911 recordings and the state court sentencing
20   proceeding.  At sentencing, although very faint, the interpreter responded, "yes" to the
21   judge's question whether Plaintiff understood the contents of the protective order.
22   (Dkt. No. 52-4, Karnavas Decl., Ex. 7.)   At the hearing, contrary to his declaration,
23   Plaintiff did not ask for an explanation of the protective order but asked for
24   clarification regarding the public works he was sentenced to.  Therefore, Plaintiff has
25   not created a genuine issue of fact as to whether he consented to and was aware of the
26   protective order.

27        Despite Plaintiff's facts concerning his version of what happened prior to the
28

[12cv2437-GPC(RBB)]

Deputy Defendants' arrival, the Court looks at the facts at the time of the arrest. <u>See</u> <u>Peng</u>, 335 F.3d at 978 (whether threat of force was in fact used by offender is not material as to what officer knew at the time of arrest). At the time of the arrest, Alqershi told the Deputy Defendants that Plaintiff threatened to kill her if she called the police, that there was a protective order against Plaintiff even though she was now living with him, and that Plaintiff was aware of the protective order. The Deputy Defendants were also aware that Plaintiff had previously been involved in a prior domestic violence incident as Defendant Butcher had arrested Plaintiff in the prior incident. The facts were corroborated with a records check which revealed that there was an active full protective order protecting Alqershi from Plaintiff. Deputy Defendants had knowledge and reasonably trustworthy information of the facts to lead a prudent person to believe that Plaintiff had committed an offense. <u>See Maxwell</u>, 697 F.3d at 951; <u>see also</u> <u>Peng</u>, 335 F.3d at 978 ("an officer who is investigating a domestic dispute must make snap decisions regarding whether there is probable cause to arrest. Where, as here, the victim alleges that force, or a threat of force, existed, it is important for officers to err on the side of safety for the victim in order to prevent further violence and allow the parties to cool down.").

Plaintiff has not shown a genuine issue of material fact as to whether there was probable cause to arrest Plaintiff. Accordingly, the Court GRANTS Defendants Butcher and Lapotasky's motion for partial summary judgment on the § 1983 claim for false arrest.

### 2.  Deliberate Indifference to Serious Medical Needs

Defendants Butcher and Lopatosky argue that Plaintiff has failed to demonstrate that they were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff does not oppose Defendants' argument.

"The due process clause requires responsible governments and their agents to secure medical care for persons who have been injured while in police custody."

Maddox v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). The Due Process Clause of the Fourteenth Amendment guarantees a pretrial detainee the right to receive adequate medical care, and that right is violated if officials are deliberately indifferent to the detainee's serious medical needs. Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1242–43 (9th Cir. 2010). Deliberate indifference exists when an official knows of and disregards a serious medical condition, i.e., when an official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually draws that inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, the second amended complaint states that Defendants used unreasonable force when they twisted his right arm and caused his elbow to become dislocated. (Dkt. No. 23, SAC ¶ 53.) He alleges that Defendants were deliberately indifferent to Plaintiff's medical needs when Lopatosky knew that the forceful twisting caused the injury, and elected to keep the handcuffs on and then proceeded with the other officers to pull Plaintiff barefoot outside the house to his wife's location. (Id. ¶ 55.) He alleges that Lopatosky and the other officers should have called the paramedics immediately but they chose to ignore and subject Plaintiff to unnecessary pain and possible exacerbation of his injury. (Id.) Moreover, the ambulance did not arrive until two hours later even though the defendants knew he was suffering from excruciating pain. (Id. ¶ 21.)

Defendants present the uncontradicted declarations of Defendants Butcher and Lopatosky who state that as soon as Plaintiff complained his arm had been injured, Butcher immediately summoned the Fire Department for paramedic assistance. (Dkt. No. 52-5, Butcher Decl. ¶ 6; Dkt. No. 52-6, Lopatosky Decl. ¶ 5.) The paramedics arrived about five minutes later and Plaintiff was taken to the hospital via ambulance. (Id.) Plaintiff also testified that the ambulances came within minutes of the call. (Dkt. No. 52-4, Karnavas Decl., Ex. 4, Said Depo. at 88:2-8.) Therefore, Defendants have

demonstrated that there are no genuine issues of material fact on this cause of action. Accordingly, the Court GRANTS Defendants motion for partial summary judgment on the § 1983 claim for deliberate indifference to serious medical needs.

### 3. Malicious Prosecution

Defendants assert that they are entitled to summary judgment because Plaintiff has provided no evidence that Defendants took any action to compromise the prosecutor's independent judgment to overcome the Smiddy[8] presumption.  Plaintiff opposes.

In the Ninth Circuit, a claim for malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy.  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987) (citations omitted).  However, if malicious prosecution is "conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights", a malicious prosecution claim under § 1983 is available.  Id. at 562 (citing Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985)).  To state a claim for malicious prosecution in California under § 1983, a plaintiff must plead the "(a) the initiation of criminal prosecution, (b) malicious motivation, and (c) lack of probable cause."  Id.

The filing of a criminal complaint by the district attorney gives rise to a presumption that a decision to file a criminal complaint is presumed to result from an independent decision on the part of the district attorney and would preclude liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings.  Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981) ("Smiddy I") overruled on other grounds by Beck v. City of Upland, 527 F.3d 853, 865 (9th Cir. 2008)).  However, the presumption can be rebutted if the investigating official "improperly exerted pressure on the prosecutor, knowingly provided misinformation to

---

[8]Smiddy v. Varney, 665 F.2d 261 (9th Cir. 1981).

him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004) (applying Smiddy I presumption to malicious prosecution case).  A "plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment." Newman v. County of Orange, 457 F.3d 991, 994 (9th Cir. 2006).

In the second amended complaint, Plaintiff alleges that Defendants Butcher and Lopatosky illegally arrested him, falsified the police reports and as a result, criminal proceedings were initiated.  (Dkt. No. 23 SAC ¶¶ 62-64.)  Eventually, the criminal charges were dropped before trial.  (Id. ¶ 62.)  The SAC also asserts that Defendant Lopatosky fabricated many lies to cover his and his partners' use of excessive force that led to his injury. (Dkt. No. 23, SAC ¶ 61.)  By doing do, Lopatosky knew that Plaintiff would be maliciously prosecuted.  (Id.)  Three charges were filed against Plaintiff to deter and scare him from filing this action.  (Id. ¶ 62.)

On January 22, 2012, Plaintiff was charged with violation of California Penal Code sections 69 for resisting executive officer; section 273.6(a) for disobeying court order and section 166(c)(1) for violating the protective order in connection with the incident that is subject to this lawsuit.  (Dkt. No. 57, Ds' NOL, Ex. 6.)  On April 16, 2012, on motion by the People, the case was dismissed.  (Dkt. No. 60-4, Shashaty Decl., Ex. 8.)

In opposition, Plaintiff, in his brief, makes summary conclusions that Defendants' arrest report prompted the filing of the criminal action, the criminal case ended in Plaintiff's favor, there was no probable cause and the action was brought with malice toward the victim.  (Dkt. No. 60 at 4.)  Plaintiff only cites to the arrest report to oppose Defendants' motion and makes arguments in support.  He does not provide any other admissible evidence to support his opposition.  Plaintiff even fails to provide a declaration as to these issues.  Moreover, the citation to Lopatosky's deposition does not support Plaintiff's statements.

[12cv2437-GPC(RBB)]

Plaintiff's allegations that Defendants falsified their arrest reports by solely citing to the arrest report is not sufficient to rebut the Smiddy presumption. See Newman, 457 F.3d at 994; see also Cervantes v. County of Los Angeles, No. CV 12-9889 DDP (MRWx), 2014 WL 5528342, at *6 (C.D. Cal. Oct. 31, 2014). Therefore, the Smiddy presumption applies, and Plaintiff has not demonstrated a genuine issue of material fact that Defendants are liable for malicious prosecution. Accordingly, the Court GRANTS Defendants Lopatosky and Butcher's motion for partial summary judgment on the § 1983 claim based on malicious prosecution.

**D.    State Law Causes of Action as to all Defendants**

**1.    False Arrest**

Defendants Butcher and Lopatowsky argue that their actions are supported by probable cause under California common law and their actions are statutorily immune under California Penal Code section 847(b). The County argues it is statutorily immune under California Government section 815.2. Plaintiff opposes.

Under California law, an officer has probable cause for a warrantless arrest "if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." People v. Adams, 175 Cal. App. 3d 855, 861 (1985) (citation and quotations omitted); see also People v. Lewis, 109 Cal. App. 3d 599 (1980). The test under federal law and state law are similar. Peng, 335 F.3d at 976. Penal Code section 847(b) states that a peace officer shall not be civilly liable for false arrest if the "arrest was lawful or the officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." Cal. Penal Code § 847(b). "Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." O'Toole v. Super. Ct., 140 Cal. App. 4th 488, 511 (2006). This is an objective standard and where the facts are not disputed, reasonable cause for an arrest can be decided as a question of law. Id.

As discussed above on the § 1983 false arrest cause of action, because Deputy

Defendants had reasonably sufficient, trustworthy information to establish probable cause to arrest Plaintiff, the Court concludes that Plaintiff's state law false arrest claim also fails.  Accordingly, the Court GRANTS Defendants Butcher and Lopatosky's motion for partial summary judgment on the state law false arrest claim.

As to the County, it argues it is entitled to summary judgment pursuant to California Government Code section 815.2.  Section 815.2 provides,

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

> (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Cal. Gov't Code 815.2.  Public entitles are liable for the actions of their employees. Rivera v. County of Los Angeles, 745 F.3d 384, 393 (9th Cir. 2014) (citing California Government Code section 815.2(a)). However, if the employees are immune from liability, the public entitles are also immune.  Id. (citing California Government Code section 815.2(b)).

Here, since Deputy Defendants are entitled to summary judgment on the state law false arrest claim, the County is also entitled to summary judgment.  See Cal. Gov't Code § 815.2(b).  Accordingly, the Court GRANTS all Defendants' motion for summary judgment on the state law false arrest cause of action.

**2.     California Civil Code Section 52.1**

Defendants argue that Plaintiff cannot prevail on a violation of California Civil Code section 52.1 cause of action because the undisputed facts demonstrate that Plaintiff can prove no constitutional violation based on unlawful arrest, inadequate medical care, malicious prosecution and excessive force.

The second amended complaint asserts that Plaintiff's rights under the federal and state constitutions were committed by threats, intimidation and/or coercion by

Defendants.  (Dkt. No. 23, SAC ¶ 79.)

While Plaintiff does not address this issue in his brief, he raises facts in support of his separate statement of undisputed facts on this issue. (Dkt. No. 60-2.)  However, these facts are not material to a cause of action under section 52.1 and do not support Plaintiff's allegations.    In essence, Plaintiff has not opposed or met his burden in opposing Defendants' motion for partial summary judgment for violation of section 52.1.

California Civil Code section 52.1 establishes a private right of action for damages and other relief against a person who "interferes by threats, intimidation, or coercion," or attempts to interfere, with the exercise or enjoyment of a individual's constitutional or other legal right.  Cal. Civ. Code § 52.1.  If there are no federal constitutional violations and no conduct that constitutes a state constitutional violation, there is no conduct upon which to base a claim for liability under California Civil Code section 52.1. Reynolds v. Cnty. of San Diego, 84 F.3d 1162, 1170–71 (9th Cir. 1996), overruled on other grounds by Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir. 1997) (en banc)).  Section 52.1 does not provide any substantive protections; it allows individuals to sue for damages due to constitutional violations.  Id. at 1170.

Here, the Court concluded that Plaintiff has failed to demonstrate a federal constitutional violation as to false arrest, inadequate medical care, and malicious prosecution. Therefore, to the extent that the section 52.1 claim is based on these three constitutional causes of action, the Court GRANTS Defendants' motion for partial summary judgment.  Defendants further argue, without legal authority, that there can be no section 52.1 liability for excessive force, by itself.  Since the excessive force cause of action is not before the Court, it is not clear how Plaintiff will raise the section 52.1 issue as to excessive force.  Accordingly, the Court DENIES Defendants' motion for partial summary judgment as to section 52.1 on the excessive force cause of action.

**E.    Qualified Immunity**

Alternatively, Defendants argue that they are entitled to qualified immunity.

[12cv2437-GPC(RBB)]

1  Since the Court finds that Plaintiff has not demonstrated a genuine issue of material fact
2  as to all causes of action brought on Defendants' motion for partial summary judgment,
3  the Court need not address whether Defendants are entitled to qualified immunity.

4  **F.     Evidentiary Objections**

5       Defendants filed evidentiary objections to evidence submitted by Plaintiff. (Dkt.
6  No. 63.)  The Court notes their objections.  To the extent that the evidence is proper
7  under the Federal Rules of Evidence, the Court considered the evidence.  To the extent
8  that the evidence is not proper, the Court did not consider it.

9                                    **Conclusion**

10       Based on the above, the Court GRANTS in part and DENIES in part Defendants
11  County of San Diego, Lopatosky and Butcher's motion for partial summary judgment.
12  The Court GRANTS the entirety of Defendants' motion for partial summary judgment
13  with the exception that the Court DENIES all Defendants' motion on the state law cause
14  of action for violation of section 52.1 based on excessive force.  The hearing date set
15  for April 10, 2015 shall be **vacated**.

16       IT IS SO ORDERED.

17

18  DATED:  April 9, 2015

19                                    HON. GONZALO P. CURIEL
20                                    United States District Judge

21

22

23

24

25

26

27

28

[12cv2437-GPC(RBB)]